FILED

2013 SEP 18 AM 10: 50

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TRAVELERS INDEMNITY COMPANY OF CONNECTICUT AND ST. PAUL FIRE & MARINE INSURANCE COMPANY,

Plaintiffs,

v.

ATTORNEYS' TITLE INSURANCE FUND, INC., FLORIDA TITLE COMPANY, SECTION 10 JOINT VENTURE, LLP, SKY PROPERTY VENTURE, LLC, AND CAS GROUP, INC.

Defendants.

CASE NO.

2:13-cv-670-FtM-38DNF

**TRAVELERS INDEMNITY COM PANY OF CONNECTICUT AND ST. PAUL FIRE & MARINE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF**

Plaintiffs, TRAVELERS INDEMNITY COMPANY OF CONNECTICUT ("TIC") and ST. PAUL FIRE & MARINE INSURANCE COMPANY ("SPFMIC" collectively "TRAVELERS"), through its undersigned counsel, sues Defendants ATTORNEYS' TITLE INSURANCE FUND, INC. ("ATIF"), FLORIDA TITLE COMPANY ("FLORIDA TITLE"), and SECTION 10 JOINT VENTURE, LLP ("SECTION 10"), SKY PROPERTY VENTURE, LLC ("SKY PROPERTY") and CAS GROUP, INC. ("CAS") for declaratory relief and states as follows:

**JURISDICTION AND VENUE**

1. This is an action for declaratory relief pursuant to 28 U.S.C. Section 2201.

2. This Court has jurisdiction pursuant to 28 U.S.C. Section 1332(a)(1) based upon the diversity of the citizenship of the parties and the provisions of the Federal Declaratory

Judgment Act to declare the rights and obligations of the parties under certain policies of insurance.

3. The amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000, exclusive of interest, costs and attorneys' fees. TRAVELERS has multiple policies at issue in this matter, detailed and defined below. One of the TRAVELERS policies at issue carries limits of $2,000,000.00 "General Aggregate" limit, $2,000,000.00 "Product/Completed Operations Aggregate Limit," a $1,000,000.00 "Personal and Advertising Injury Limit," and an "Each Occurrence Limit" of $1,000,000.00 (hereinafter "the Travelers 2007 CGL Policy").

4. TRAVELERS also issued a Specialty Commercial Umbrella Liability policy at issue, in effect from January 1, 2007 through January 1, 2008, carrying limits of $10,000,000 for any one occurrence, $10,000,000 in the aggregate, and $10,000,000 products complete operations aggregate (hereinafter "St. Paul 2007 Umbrella Policy").

5. In addition, TRAVELERS issued a commercial general liability policy at issue, in effect from January 1, 2012 through January 1, 2013, carrying limits of $2,000,000.00 "General Aggregate" limit, $2,000,000.00 "Product/Completed Operations Aggregate Limit," a $1,000,000.00 "Personal and Advertising Injury Limit," and an "Each Occurrence Limit" of $1,000,000.00 (hereinafter "the Travelers 2012 CGL Policy").

6. Further, TRAVELERS issued a Specialty Commercial Umbrella Liability policy at issue, in effect from January 1, 2012 through January 1, 2013, carrying limits of $10,000,000 for any one occurrence, $10,000,000 in the aggregate, and $10,000,000 products complete operations aggregate (hereinafter "St. Paul 2012 Umbrella Policy").

7. Further, SECTION 10 alleges in the underlying suit that it sustained damages of approximately $40 million and on September 10, 2013, ATIF, FLORIDA TITLE, SKY PROPERTY and SECTION 10 moved the Court in Case number 07-CA-003520 to approve a settlement of $40 Million and to enter a consent judgment on the settlement. Accordingly, the amount in controversy is $40 Million. **Exhibit "A."**

8. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. Sections 1391(a) and 1391(c), because the present claim for declaratory relief arose in this district. Additionally, the underlying action for damages that gives rise to this coverage dispute is pending in the Twelfth Judicial Circuit in and for Lee County, which is situated within this district.

9. All conditions precedent to the filing of this action have occurred or have been complied with.

## PARTIES

10. At all times material to this action, Plaintiff SPFMIC, is and was a Connecticut corporation with its principal place of business in Connecticut. SPFMIC is and was a citizen of Connecticut.

11. At all times material to this action, Plaintiff TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, is and was a Connecticut corporation with its principal place of business in Connecticut. TRAVELERS INDEMNITY COMPANY OF CONNECTICUT is and was a citizen of Connecticut.

12. Upon information and belief, at all relevant times, Defendant, ATIF, is and was a Florida corporation, with its principal place of business in Orlando, Florida. ATIF is and was a citizen of Florida.

13. Upon information and belief, at all times material to this action, Defendant, FLORIDA TITLE is and was Florida corporation, with its principal place of business in Orlando, Florida. FLORIDA TITLE is and was a citizen of Florida.

14. Upon information and belief, at all times material to this action, Defendant, SECTION 10 is and was a Florida limited liability partnership, with its principal place of business in Lee County, Florida. SECTION 10 is and was a citizen of Florida and Michigan by virtue of the citizenship of its partners and the members of its partners. SECTION 10 is comprised of two partners: CAS Group, Inc. and SKY PROPERTY. None of the Partners of SECTION 10 are citizens of Connecticut. The Citizenship of SECTION 10's partners is set forth more fully below.

15. CAS Group, Inc. is a Florida Corporation with its principal place of business in Miami, Florida. CAS Group, Inc. is and was a citizen of Florida.

16. Upon information and belief, at all times material to this action, Defendant, SKY PROPERTY is and was a Florida limited liability company with its principal place of business in Winter Park, Florida. Further upon information and belief, SKY PROPERTY'S members are: a) the Alexandra Krot Trust whose principal address is in Winter Park, Florida. For the purposes of diversity citizenship a trust is a citizen of the of the state of the Trustee's citizenship. The trustee of the Alexandra Krot trust is Alexandra Krot and Alexandra Krot resides in and is a citizen of Florida. Or, in the alternative Alexandra Krot is not a citizen of Connecticut; b) Lehigh Asset

Management, LLC a Florida limited liability company with its principal place of business in Bloomfield, Michigan. Lehigh Asset Management, LLC is a Florida limited liability company. Its member is the Alexandra Krot Trust whose citizenship has been alleged *supra*. Lehigh Asset Management is a citizen of Michigan and Florida. Or, in the alternative, none of Lehigh Asset Management, LLC's members are citizens of Connecticut; and c) Aaron Miller. Aaron Miller resides in and is a citizen of Florida. Or, in the alternative, Miller is not a citizen of Connecticut. None of the members of SKY PROPERTY; or the trustees or members, of the members, of SKY PROPERTY are citizens of Connecticut. SKY PROPERTY is a citizen of Florida and Michigan.

## FACTUAL ALLEGATIONS

17. On or about April 5, 2013, a third amended counterclaim was filed against ATIF in an action styled *Attorney's Title Ins. Fund, Inc. and Florida Title Co. v. Sky Property Venture, LLC, Sky Development Group, LLC, and Section 10 Joint Venture, LLP,* Case No. 07-CA-003520, which is presently pending in the Circuit Court for the Twelfth Judicial Circuit in and for Lee County, Florida ("*Section 10* Counterclaim"). A copy of the *Section 10* Counterclaim is attached hereto as **Exhibit "B"** and is incorporated by reference herein.

18. On or about July 24, 2013, a complaint naming ATIF as a defendant was filed in an action styled *Section 10 Joint Venture, LLP v. Attorneys' Title Insur. Fund, Inc. and Florida Title Co.*, Case No.: 13-CA-002032, which is presently pending in the Circuit Court for the Twelfth Judicial Circuit in and for Lee County, Florida ("*Section 10* Complaint"). A copy of the *Section 10* Complaint is attached hereto as **Exhibit "C"** and is incorporated by reference herein.

19. Case No. 13-CA-002032, the case in which the *Section 10* Complaint was filed, and Case No. 07-CA-003520, the case in which the *Section 10* Counterclaim was filed, have been consolidated. They are collectively referred to herein as the "*Section 10* Action."

20. According to the *Section 10* action, this dispute arises out of a fraud perpetrated by Ms. Natalia Wolf and one of the corporate shells she allegedly used, Sky Development Group, LLC.

21. The *Section 10* action alleges that Ms. Wolf forged deeds into the company name for properties she did not own and then sold the properties and absconded with the proceeds.

22. The *Section 10* action further alleges that Ms. Wolf would purchase properties subject to large mortgages and would sell the lots encumbered by the mortgages to unsuspecting buyers and warrant clear title.

23. In addition, the *Section 10* action alleges that Ms. Wolf conspired with a former ATIF employee to sell about 80 lots in Citrus County, Florida. The action alleges that ATIF issued title insurance for these lots despite the fact that Ms. Wolf did not own the lots.

24. Also, the action alleges that ATIF received claims on the insurance it sold for the Citrus County lots and paid approximately $3.1 million to Kennedy Funding, the entity that initially financed the purchase of the property for Ms. Wolf. It is alleged that as part of this transaction, ATIF's subsidiary, FLORIDA TITLE, received an assignment of rights from Kennedy Funding.

25. Further, it is alleged that ATIF identified the "Section 10 Property" – as it is referred to in the *Section 10* Complaint describing the property as approximately 640 acres of

CASE NO.

property in Lee County, Florida – as one of the parcels in which Ms. Wolf invested the proceeds of her fraud.

26. The *Section 10* action alleges that ATIF and FLORIDA TITLE initiated their "recovery action" against SECTION 10 as an attempt to extort money from SECTION 10.

27. The *Section 10* action alleges that on or about May 2, 2007, the Official Records of Lee County recorded ATIF's *Lis Pendens* on the Section 10 Property.

28. Also, it is alleged that SECTION 10 sustained a loss of approximately $40 million and claims that qualified buyers were interested in the property but did not purchase the property out of concern for the *Lis Pendens*.

29. Moreover, the *Section 10* action alleges that SECTION 10 eventually defaulted on its loan and the Section 10 Property was sold out of foreclosure.

30. TRAVELERS provided commercial general liability coverage to ATIF pursuant to the Travelers' Policy, policy number Y-630-483X8426-TCT-07. A copy of the Travelers' policy is attached hereto as **Exhibit "D"** and is incorporated by reference herein. The Travelers' policy was delivered to ATIF at P.O. Box 628600, Orlando, Florida 32862.

31. TRAVELERS also provided a specialty commercial umbrella liability policy to ATIF pursuant to the Travelers' Umbrella Policy, in effect from January 1, 2007 through January 1, 2008, policy number QK06802212. A copy of the Travelers' Umbrella policy is attached hereto as **Exhibit "E"** and is incorporated by reference herein. The Travelers' Umbrella policy was delivered to ATIF at 6545 Corporate Centre Boulevard, Orlando, Florida 32822.

32. In addition, TRAVELERS provided a commercial general liability policy to ATIF, in effect from January 1, 2012 through January 1, 2013, policy number Y-630-483X8426-

TIA-12. A copy of the Travelers' 2012 policy is attached hereto as **Exhibit "F"** and is incorporated by reference herein. The Travelers' 2012 policy was delivered to 6545 Corporate Centre Boulevard, Suite 200, Orlando, Florida 32822.

33. Further, TRAVELERS provided a specialty commercial umbrella liability policy to ATIF, in effect from January 1, 2012 through January 1, 2013, pursuant to policy number ZUP-12P59851-12-NF. A copy of the Travelers' 2012 Umbrella policy is attached hereto as **Exhibit "G"** and is incorporated by reference herein. The Travelers' 2012 Umbrella policy was delivered to ATIF at 6545 Corporate Centre Boulevard, Orlando, Florida 32822.

34. TRAVELERS was first notified of the subject lawsuits on or about July 30, 2012.

35. TRAVELERS denied coverage for claims that were asserted in July of 2012. **Exhibit "H."** Upon receipt of an amended counterclaim in July of 2013 and subsequent thereto, TRAVELERS agreed to defend ATIF, under a September 6, 2013 reservation of rights, based on a new allegation that appeared to be a claim for malicious prosecution. **Exhibit "I."**

36. On September 9, 2013, ATIF's counsel sent a letter to Travelers purporting to reject the defense offered in the September 6, 2013 reservation of rights. **Exhibit "J."**

37. On September 10, 2013, ATIF, FLORIDA TITLE, and SKY PROPERTY and SECTION 10 moved the Court in Case number 07-CA-003520 to approve a settlement of $40 Million and to enter a consent judgment on the settlement. **Exhibit "A"** The settlement agreement referred to in **Exhibit "A"** was entered without TRAVELERS' knowledge or consent.

CASE NO.

## TRAVELERS' 2007 CGL POLICY[1]

38. The Travelers' policy was in effect from January 1, 2007 through January 1, 2008 and provided commercial general liability coverage in the amount of $2,000,000.00 "General Aggregate" limit, $2,000,000.00 "Product/Completed Operations Aggregate Limit," a $1,000,000.00 "Personal and Advertising Injury Limit," and an "Each Occurrence Limit" of $1,000,000.00. It is attached hereto as **Exhibit "D."**

39. The Travelers' policy provides as follows:

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage C;

**b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

---

[1] It is Travelers' position that the 2007 policies are at issue because they were in place when the allegedly malicious action was initiated. However, this complaint seeks a declaration under 2012 policies as well because those policies were in place when ATIF dismissed two claims in the underlying action without prejudice. Section 10 alleged that the dismissal of those claims satisfied the "successful adjudication" element of its cause of action for the purposes of initiating a claim for malicious prosecution. Travelers maintains that the analysis is the same whether under the 2007 or 2012 policies – there is no coverage available under either.

CASE NO.

**c.** Damages under Coverage B.

******

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

******

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

******

**SECTION IV- COMMERCIAL GENERAL LIABILITY CONDITIONS**

******

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

CASE NO.

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of

this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

See **Exhibit "D,"** CG 00 01 10 01, p. 10-11.

40. The Travelers' Policy contains the following Endorsement:

**WEB XTEND LIABILITY**

**COVERAGE B. PERSONAL INJURY, ADVERTISING INJURY AND WEB SITE INJURY LIABILITY**

**1. Insuring Agreement.**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury", "advertising injury" or "web site injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury", "advertising injury", or "web site injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** -Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to:

CASE NO.

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; or

(3) "Web site injury" caused by an offense committed in the course of the visual or audio presentation of material on "your web site" or in the numerical expression of computer code used to enable "your web site";

but only if the offense was committed in the "coverage territory" during the policy period.

With respect to subparagraph **b. (1)** above, bulletins, financial or annual reports, or newsletters that are not published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters will not be considered publishing.

**2. Exclusions.**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal injury", "advertising injury" or "web site injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury", "advertising injury" or "web site injury".

**b. Material Published With Knowledge Of Falsity**

"Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

CASE NO.

**c. Material Published Prior To Policy Period**

"Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

******

**SECTION III - Limits Of Insurance, paragraph 4**, is deleted and replaced by the following:

**4.** Subject to **2**. above, the Personal, Advertising and Web Site Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal injury", advertising injury" and all "web site injury" sustained by anyone person or organization.

**SECTION V - DEFINITIONS**

******

**PERSONAL AND ADVERTISING INJURY**

The definition of **"Personal and advertising injury" (SECTION V -DEFINITIONS)** is deleted in its entirety and replaced by the following definitions of "advertising injury" and "personal injury":

"Advertising injury" means injury, arising out of one or more of the following offenses:

**a.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

**b.** Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life; or

CASE NO.

**c.** Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

"Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is performed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

**d.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged; or

**e.** Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life.

******

The following definitions are added to **Section V – DEFINITIONS**

**WEB SITE INJURY**

Web site injury" means injury, other than "personal injury" or "advertising injury", arising out of one or more of the following offenses:

**a.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

**b.** Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life;

**c.** Oral, written or electronic publication of material that violates a person's right of publicity, provided that claim is made or "suit" is brought by the person claiming rights of publicity; or

**d.** Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership of such copyright, title or slogan.

**YOUR WEB SITE**

"Your web site" means all computer files and data which may be accessed via the Internet using a Universal Resource Locator that includes any domain name owned by or assigned to you.

<u>See</u> **Exhibit "D,"** CG D2 34 01 05, p. 1-5.

41. The Travelers' Policy contains the following Exclusion:

**EXCLUSION – FINANCIAL SERVICES**

******

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or the failure to render financial services by any insured to others.

CASE NO.

******

For the purpose of this exclusion, financial services include the following types of activities:

******

**5.** Repossession, foreclosure or subsequent sale of real or personal property from a borrower or acting as an assignee for the benefit of creditors.

******

**11.** With respect to any contract or treaty of insurance, reinsurance, suretyship, annuity, endowment or employee benefit plan, nursing, medical, dental, ps ychiatric or laboratory service, health facility management, or other health maintenance or cost containment programs, including applications, receipts or binders:

**a.** The assumption of any obligation;

**b.** The failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise;

**c.** Advising, inspecting, reporting or making recommendations;

**d.** Effecting coverage; or

**e.** Investigating, defending, handling, adjusting or settling any claim or "suit".

******

**14.** Performing any claim, investigative, adjustment, engineering or inspection service for a fee.

This exclusion does not apply to:

**(a)** Typographical errors;

**(b)** Clerical errors in deposits into or withdrawals from customers' accounts:

CASE NO.

> **(c)** Clerical errors in disclosing financial information; or
>
> **(d)** Other acts, errors or omissions of a clerical nature.

<u>See</u> **Exhibit "D,"** CG D1 08 02 05, p. 1-2.

42. Finally, the Travelers' policy includes the following Amendment:

**AMENDMENT – NON CUMULATION OF EACH OCCURRENCE LIMIT OF LIABILITY and NON CUMULATION OF PERSONAL and ADVERTISING INJURY LIMIT**

**1.** Paragraph 5 of SECTION III- LIMITS OF INSURANCE. is amended to include the following:

> Non cumulation of Each Occurrence Limit - If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such an "occurrence."

**2.** Paragraph 4 of SECTION III LIMITS OF INSURANCE, is amended to include the following:

> Non cumulation of Personal and Advertising Limit - If "personal injury" and/or "advertising injury" is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Personal Injury and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance

> company under the other policies because of such "personal injury" and/or "advertising injury."

See **Exhibit "D,"** CG D2 03 12 97, p. 1.

**ST. PAUL'S 2007 UMBRELLA POLICY**

43. The St. Paul Umbrella policy was in effect from January 1, 2007 through January 1, 2008 and provided specialty commercial umbrella liability coverage in the amount of $10,000,000 for any one occurrence, $10,000,000 in the aggregate, and $10,000,000 products complete operations aggregate. It is attached hereto as **Exhibit "E."**

44. St. Paul's ' 2007 Umbrella policy contains the following Exclusion:

> **Insurance Company, Surety, Reinsurance Company or Fiduciary Capacity Exclusion**
>
> This insurance does not apply to:
>
> 1. **Bodily Injury** or **Property Damage** to, or arising out of, any property held by or in the care, custody or control of the **Insured** while the **Insured** is acting in any **Fiduciary Capacity**;
>
> 2. **Property Damage** to money, currency, coin, bank notes, Federal Reserve notes, postage and revenue stamps, U.S. Savings Stamp, bullion, precious metals of all kinds and in any form article made from such previous metals, jewelry, watches, necklaces, bracelets, gems, precious and semi-precious stones, bonds, securities, evidences of debts, debentures, scripts, certificates, receipts, warrant rights, transfers, money orders, travelers checks, letters of credit, bills of lading, abstracts of title, insurance policies, deeds, mortgages upon real estate and/ or up on chattels and upon interests therein, and assignments of such policies, mortgages and instruments, other valuable papers, documents, and all other instruments similar to or in the nature of the foregoing;
>
> 3. **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the rendering of, or failure to render, any professional service by or on behalf of any **Insured** while acting in any **Fiduciary Capacity**;

4. **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the rendering of, or failure to render, any professional service by or on behalf of any **Insured** if liability for such injury or damage has been assumed by that Insured, or by any agent or sub-agent of that Insured, under any insurance binder or any contract relating to insurance, suretyship, or reinsurance;

5. **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the rendering of, or failure to render, any professional service by or on behalf of any Insured, including:

**a.** the writing or failure to write any contracts of insurance, suretyship or reinsurance;

**b.** any consulting or insurance agent or broker activity;

**c.** the operation of any investment, loan or real estate department;

**d.** any inspection, engineering or safety engineering service; or

**e.** any data processing or computer service; or

**f.** the handling of any insurance, surety or reinsurance claims or losses.

The following words have or include special meaning as used in this endorsement and described below:

**Fiduciary Capacity** includes:

**a.** administrator, executor, trustee under will or personal trust agreement, committee for incompetents, guardian, and agent or sub-agent for any of the foregoing, custodian or securities, manager of real estate or personal property; and

**b.** interest or dividend disbursing agent, paying agent, fiscal agent, transfer agent, registrar, agent for voting trustees, warrant agent, depository, or agent for a committee of holders of stock or

> securities, escrow agent or in any similar trust capacity, including trustees under a corporate bond indenture, a sinking fund agent, or receiver or trustee appointed by any court in receivership, bankruptcy or re-organization proceeding.

All other terms of your policy remain the same.

See **Exhibit "E,"** SU048 Ed. 10-02, p. 1[2].

45. The Umbrella policy provides as follows:

**SPECIALTY COMMERCIAL UMBRELLA LIABILITY POLICY**

This is a Commercial Umbrella Liability Policy Form. It specifies the coverage provided, restrictions or exclusions to that coverage, and the rights and duties under this contract.

******

**INSURING AGREEMENTS**

**I. Coverage**

**A.** We will pay on behalf of:

> **1.** the **Insured** all sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law; or
>
> **2.** the **Named Insured** all sums in excess of the **Retained Limit** that the **Named Insured** becomes legally obligated to pay as damages assumed by the **Named Insured** under an **Insured Contract**;

because of:

---

[2] This exclusion is included in both the 2007 and 2012 umbrella policies.

CASE NO.

******

> 2. **Personal Injury** or **Advertising Injury** that is caused by an **Occurrence** committed during the Policy Period;

******

There is no coverage under this policy for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** unless a **Retained Limit** applies.

**B. Retained Limit** means the greater of the following:

> **1.** the total of the applicable limits of all **Scheduled Underlying Insurance**, and the applicable limits of any **Other Insurance**, for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by such **Scheduled Underlying Insurance** or **Other Insurance**;

******

**G.** If the total of the applicable limits of any **Scheduled Underlying Insurance** or any **Scheduled Retained Limit** are reduced or exhausted by payment of one or more **Claims** or **Suits** seeking damages that would be covered by this policy, we will:

> **1.** in the event of reduction of the limits of the **Scheduled Underlying Insurance** or the **Scheduled Retained Limit**, pay in excess of such reduced limits; or
>
> **2.** in the event of exhaustion of the limits of the **Scheduled Underlying Insurance** or the **Scheduled Retained Limit**, continue in force as underlying insurance upon such exhaustion; and subject to any specific exclusions or other specific coverage limitations of that **Scheduled Underlying Insurance** or **Scheduled Retained Limit**.

**H.** The applicable limits of any **Scheduled Underlying Insurance** or **Scheduled Retained Limit** shall not, for the purpose of determining when this policy applies, be reduced or exhausted by

any payment with respect to **Claims** or **Suits** seeking damages which are not covered by this policy.

**II. Defense**

**A.** We shall have the right and duty to assume control of the defense of any **Claim** or **Suit** seeking damages covered by this policy, and we shall have the right to investigate and settle such **Claim** or **Suit**, when the **Retained Limit** has been exhausted by payment of judgments or settlements that would be covered by this policy. These rights and duties apply even if the **Claim** or **Suit** is groundless, false or fraudulent.

**B.** Prior to the exhaustion of the **Retained Limit** we shall have the right, but not the duty, to participate in the investigation, settlement or defense of any **Claim** or **Suit** seeking damages that would be covered by this policy. This right includes the opportunity to participate in the defense of any **Claim** or **Suit** that may result in damages covered by this policy. If we exercise this right, we will do so at our own expense.

**C.** We have no duty to defend, investigate or settle any **Claim** or **Suit** seeking damages not covered by this policy.

**D.** We will not defend any **Claim** or **Suit** after the applicable limits of insurance under this policy have been exhausted by payment of judgments or settlements.

**E.** All expenses we incur in the defense of any **Claim** or **Suit** are in addition to the limits of insurance under this policy.

******

**III. Limits Of Insurance**

**A.** The limits of insurance stated in Item 3 of the Declarations and the rules below establish the most we will pay regardless of the number of:

**1. Insureds**;

**2. Claims** made or **Suits** brought;

**3.** person or organizations making **Claims** or bringing **Suits**; or

**4.** coverages provided under this policy.

**B.** The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I. Coverage except for:

**1.** damages included in the **Products - Completed Operations Hazard**; and

**2.** coverages included in the **Scheduled Underlying Insurance** or **Scheduled Retained Limits** to which no underlying aggregate applies.

If any **Scheduled Underlying Insurance** or any **Scheduled Retained Limit** contains aggregate limits, other than an aggregate applying to the **Products-Completed Operations Hazard**, the General Aggregate state d in the Declarations will apply in the same manner as the aggregate limits of each **Scheduled Underlying Insurance** or each **Scheduled Retained Limit**.

**C.** The Products - Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products – Completed Operations Hazard.**

**D.** Subject to B. and C. above, the Each Occurrence Limit is the most we will pay for all damages covered under Insuring Agreement I. Coverage because of all **Bodily Injury**, **Property Damage**, **Personal Injury** and **Advertising Injury** caused by any one **Occurrence**.

******

See **Exhibit "E,"** SUI001 Ed. 10-02, p. 1-4.

46. Travelers' Umbrella policy contains the following definitions:

**IV. Definitions**

**A. Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For purposes of this definition:

1. notices that are published include material placed on the internet or similar electronic means of communication;

2. only that part of your website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an **Advertisement**; and

3. the placing of advertising, borders or frames for you or others, or links for or to others, on or in your website is not considered an **Advertisement**.

**B. Advertising Idea** means a manner or style of **Advertisement** that others use and intend to attract attention in their **Advertisement**. However, information used to identify or record customers or supporters, such as a list of customers or supporters, shall not be considered to be an **Advertising Idea**.

**C. Advertising Injury** means injury, other than **Bodily Injury** or **Personal Injury**, arising out of your business and caused by one or more of the following offenses:

1. oral, written or electronic publication of material in your **Advertisement** that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. oral, written or electronic publication of material in your **Advertisement** that violates a person's right of privacy;

3. unauthorized use in your **Advertisement** of another's **Advertising Idea**; or

4. infringement in your **Advertisement** of another's copyright, trade dress, or **Slogan**.

******

**F. Claim** means a demand that seeks damages.

******

**O. Occurrence** means:

CASE NO.

******

**2.** as respects **Personal Injury**, an offense arising out of your business that results in **Personal Injury**. All **Personal Injury** caused by the same or related injurious material, act or offense shall be considered to be caused by one Occurrence, regardless of the frequency or repetition thereof, the number and kind of media used or the number of persons or organizations making **Claims** or bringing **Suits**; and

**3.** as respects **Advertising Injury**, an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury**. All **Advertising Injury** caused by the same or related injurious material, act or offense shall be considered to be caused by one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used or the number of persons or organizations making **Claims** or bringing **Suits**.

******

**Q. Personal Injury** means injury, other than **Bodily Injury** or **Advertising Injury**, arising out of your business and caused by one or more of the following offenses:

**1.** false arrest, detention or imprisonment;

**2.** malicious prosecution;

**3.** the wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

**4.** oral, written or electronic publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services; or

**5.** oral, written or electronic publication of material that violates a person's right of privacy.

CASE NO.

**R. Policy Period** means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the termination date of this policy.

******

**W. Scheduled Underlying Insurance** means:

**1.** the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy; and

**2.** automatically any renewal or replacement of any policy described in paragraph IV.W.1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

******

**AA. Tort Liability** means a liability that would be imposed by law in the absence of any contract or agreement.

******

See **Exhibit "E,"** SU001 Ed. 10-02, p. 4-10.

47. Travelers' Umbrella policy contains the following Exclusions:

**V. Exclusions**

This insurance does not apply to:

******

**J. Known Violation of Rights**

**Personal Injury** or **Advertising Injury** caused by or committed at the direction of the **Insured**, or by an offense committed at the direction of the **Insured**, with knowledge that the rights of another would be violated and that **Personal Injury** or **Advertising Injury** would result.

**K. Material Published with Knowledge of Falsity**

**Personal Injury** or **Advertising Injury** arising out of oral, written, or electronic publication of material, if done by or at the direction of the Insured with knowledge of its falsity.

**L. Material Published Prior to Policy Period**

**Personal Injury** or **Advertising Injury** arising out of any:

**1.** oral, written, or electronic publication of material whose first publication;

******

took place before the beginning of the **Policy Period.**

******

See **Exhibit "E,"** SU001 Ed. 10-20, p. 13-14.

48. The 2007 Umbrella Policy also contains the following Financial Institutions Exclusion:

**FINANCIAL INSTITUTIONS EXCLUSION**

**1.** This insurance does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of:

**a.** Any real or personal property operations or other business enterprises or activities over which any **Insured** exercises custody, control, ownership, maintenance, supervision, use or management in any of the following capacities: fiduciary, trustee, guardian, executor, conservator, administrator, custodian, escrow agent, or any similar capacity;

**b.** Dama ge to personal property of others in the care, custody, control or safekeeping of any **Insured;**

CASE NO.

**c.** The use or misuse of any funds by persons or organizations to whom any **Insured** had made a loan or extended any credit;

**d.** The ownership, maintenance, or use, including all related operations, of any real or personal property in which any **Insured** holds or did hold a security interest;

**e.** The ownership, maintenance, operation, use, entrustment to others, lease or rental to others, **Loading or Unloading** of any aircraft, watercraft, railroad locomotive or railroad car;

**f.** The violation of, or failure to comply with, any state or federal law or regulation governing or regulating the activities or responsibilities of financial institutions, financial institution-affiliated parties or creditors, including the Truth in Lending Act U.S.C title 15, sections 1601 et. seq., or the Financial Institutions Reform, Recovery and Enforcement Act of 1989 or any amendments or additions to such laws; or

**g.** The violation of, or failure to comply with, any state or federal securities or "Blue-sky" law or regulation including the Securities Act of 1933, the Securities Exchange Act of 1934, or any amendments or additions to such laws.

**2.** This insurance does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of the rendering of, or failure to render, any professional service by any person or organization acting in the capacity of a financial institution, consultant, trustee, conservator, agent, investment banker, financial planner, stock broker, stock syndicate lender, real estate manager or broker, insurance agent or broker, insurance company or consultant, a representative of any of the above or in any similar capacity, including the following professional services:

**a.** Administering estates or trusts;

**b.** Managing real or personal property of others including leasing or rental of such property;

CASE NO.

**c.** Acting as a trustee, mortgagee, mortgage servicing agent or fiduciary with respect to deed of trust, mortgages or foreclosure;

**d.** Providing financial, economic, business or investment advice;

**e.** Providing investment, advisory, financial planning, or management services;

**f.** Acting as an escrow company or escrow agent;

**g.** Auditing the accounts or records of others;

**h.** Acting as a fiduciary or trustee for mutual funds, pension or welfare funds, securities, portfolios, or other personal or business financial matters, or any similar activities;

**i.** Inspecting, reporting, recording or documenting any financial, economic or investment transaction;

**j.** Electronic data processing;

**k.** Advising on, representing or enacting insurance coverages or matters of insurance;

**l.** Complying or failing to comply with a notice to stop payment in connection with any check, note or draft, or any act, omission or other conduct related to complying or failing to comply with a notice to stop payment in connection with any check, note or draft; or

**m.** Refusing to pay, certify or give notice of dishonor of any check, note or draft, or any act, omission or other conduct related to paying, certifying or giving notice of dishonor of any check, note or draft.

**3.** This insurance does not apply to **Bodily Injury**, **Property Damage, Personal Injury** or **Advertising Injury** arising out of any breach of duty, wrongful act, error or omission by any Insured, or by any other person for whose acts any **Insured** is liable, while

CASE NO.

acting as an officer, director, trustee or executor of any business, non-profit organization, fund, trust or estate or as a public official.

All other terms of your policy remain the same.

See **Exhibit "E,"** SU043 Ed. 10-20, p. 1-2.

## ST. PAUL'S 2012 UMBRELLA POLICY

49. ST. PAUL also issued a specialty commercial umbrella liability policy in effect from January 1, 2012 through January 1, 2013, with coverage in the amount of $10,000,000 for any one occurrence, $10,000,000 in the aggregate, and $10,000,000 products complete operations aggregate. A copy of this policy is attached hereto as **Exhibit "G"** and incorporated herein by reference.

50. St. Paul's ' 2012 Umbrella policy contains the following Exclusion:

**Insurance Company, Surety, Reinsurance Company or Fiduciary Capacity Exclusion**

This insurance does not apply to:

**1. Bodily Injury** or **Property Damage** to, or arising out of, any property held by or in the care, custody or control of the **Insured** while the **Insured** is acting in any **Fiduciary Capacity**;

**2. Property Damage** to money, currency, coin, bank notes, Federal Reserve notes, postage and revenue stamps, U.S. Savings Stamp, bullion, precious metals of all kinds and in any form article made from such previous metals, jewelry, watches, necklaces, bracelets, gems, precious and semi-precious stones, bonds, securities, evidences of debts, debentures, scripts, certificates, receipts, warrant rights, transfers, money orders, travelers checks, letters of credit, bills of lading, abstracts of title, insurance policies, deeds, mortgages upon real estate and/ or up on chattels and upon interests therein, and assignments of such policies, mortgages and instruments, other valuable papers, documents, and all other instruments similar to or in the nature of the foregoing;

**3. Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the rendering of, or failure to

render, any professional service by or on behalf of any **Insured** while acting in any **Fiduciary Capacity**;

4. **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the rendering of, or failure to render, any professional service by or on behalf of any **Insured** if liability for such injury or damage has been assumed by that Insured, or by any agent or sub-agent of that Insured, under any insurance binder or any contact relating to insurance, suretyship, or reinsurance;

5. **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the rendering of, or failure to render, any professional service by or on behalf of any Insured, including:

> **a.** the writing or failure to write any contracts of insurance, suretyship or reinsurance;
>
> **b.** any consulting or insurance agent or broker activity;
>
> **c.** the operation of any investment, loan or real estate department;
>
> **d.** any inspection, engineering or safety engineering service; or
>
> **e.** any data processing or computer service; or
>
> **f.** the handling of any insurance, surety or reinsurance claims or losses.

The following words have or include special meaning as used in this endorsement and described below:

**Fiduciary Capacity** includes:

> **a.** administrator, executor, trustee under will or personal trust agreement, committee for incompetents, guardian, and agent or sub-agent for any of the foregoing, custodian or securities, manager of real estate or personal property; and

> **b.** interest or dividend disbursing agent, paying agent, fiscal agent, transfer agent, registrar, agent for voting trustees, warrant agent, depository, or agent for a committee of holders of stock or securities, escrow agent or in any similar trust capacity, including trustees under a corporate bond indenture, a sinking fund agent, or receiver or trustee appointed by any court in receivership, bankruptcy or re-organization proceeding.
>
> All other terms of your policy remain the same.

See **Exhibit "G,"** SU048 Ed. 10-02, p. 1.

## DECLARATORY RELIEF

51. Plaintiff, TRAVELERS, hereby incorporates by reference and restates paragraphs 1-50 as if fully stated herein.

52. It is the position of TRAVELERS that the subject policies do not provide coverage for the claims asserted in the *Section 10* action due to the Commercial General Liability Conditions.

53. It is the position of TRAVELERS that the subject policies do not provide coverage for the claims asserted in the *Section 10* action due to the Exclusions included in the "Web Xtend" Endorsement.

54. It is the position of TRAVELERS that the subject policies do not provide coverage for the claims asserted in the *Section 10* action due to the "Exclusion – Financial Services" exclusion.

55. It is the position of TRAVELERS that the subject policies do not provide coverage for the claims asserted in the *Section 10* action due to the "Non Cumulation of Each

Occurrence Limit of Liability and Non Cumulation of Personal and Advertising Injury Limit" amendment.

56. It is TRAVELERS' position that only the 2007 policies apply to claims asserted in the *Section 10* complaint and that policies issued in later years do not apply.

57. It is the position of TRAVELERS that the subject policies do not provide coverage for the claims asserted in the *Section 10* action due to the Insuring Agreements in the policies.

58. It is the position of TRAVELERS that the subject policies do not provide coverage for the claims asserted in the *Section 10* action due to the "Financial Institutions Exclusion."

59. It is the position of TRAVELERS that the subject policies do not provide coverage for the claims asserted in the *Section 10* action due to the intentional nature of the allegations.

60. It is the position of TRAVELERS that the subject policies do not provide coverage for the claims asserted in the *Section 10* action due to the application of exclusions in the policies which are attached to this complaint and integrated herein by reference, whether those exclusions are mentioned specifically in the body of this complaint or not.

61. It is the position of TRAVELERS that the subject policies do not provide coverage for the claims asserted in the *Section 10* action due to the "Insurance Company, Surety, Reinsurance Company or Fiduciary Capacity Exclusion."

62. It is the position of TRAVELERS that, because there is not coverage for the claims asserted in the *Section 10* action, that it is not required to pay any settlement entered

between ATIF, FLORIDA TITLE, SECTION 10, and SKY PROPERTY. Further, it is the position of TRAVELERS that it is not required to pay any consent judgment or final judgment that may be entered pursuant to any settlement agreement between and among the Defendants.

63. It is the position of TRAVELERS that it is not required to pay any consent judgment or final judgment that may be entered pursuant to any settlement agreement between and among the Defendants because Defendants entered into a settlement agreement that is not reasonable.

64. It is the position of TRAVELERS that it is not required to pay any consent judgment or final judgment that may be entered pursuant to any settlement agreement between and among the Defendants because Defendants entered into a settlement agreement that was not negotiated or entered in good faith.

65. It is the position of TRAVELERS that it is not required to pay any consent judgment or final judgment that may be entered pursuant to any settlement agreement between and among the Defendants because Defendants entered into a settlement agreement that is the product of collusion.

66. It is the position of TRAVELERS that it is not required to pay any consent judgment or final judgment that may be entered pursuant to any settlement agreement between and among the Defendants because ATIF did not actually defend itself.

67. It is the position of TRAVELERS that it is not required to pay any consent judgment or final judgment that may be entered pursuant to any settlement agreement between and among the Defendants because ATIF failed to cooperate and the lack of cooperation was material; TRAVELERS suffered substantial prejudice due to the failure to cooperate and

TRAVELERS exercised diligence and good faith in trying to bring about the ATIF's cooperation.

68. It is the position of TRAVELERS that it is not required to pay any consent judgment or final judgment that may be entered pursuant to any settlement agreement between and among the Defendants because TRAVELERS did not wrongfully refuse to defend.

69. It is the position of TRAVELERS that it is not required to pay any consent judgment or final judgment that may be entered pursuant to any settlement agreement between and among the Defendants because defendants entered into a settlement agreement wherein ATIF is not legally obligated to pay damages to the other defendants.

70. It is the position of TRAVELERS that ATIF breached the subject policies by entering into a settlement without TRAVELERS' consent and or knowledge.

71. It is the position of ATIF that the subject policies provide coverage for the claims asserted in the *Section 10* action. It is the position of ATIF that TRAVLERS is required to pay for the settlement that ATIF entered with the other defendants and required to pay any consent judgment or final judgment entered pursuant to the settlement agreement between ATIF and the other defendants.

72. An actual, present and justiciable controversy exists between Plaintiff, TRAVELERS, and Defendants, warranting the entry of declaratory judgment by this Court.

WHEREFORE, Plaintiffs, TRAVELERS, requests this Court to enter judgment in its favor, declaring that no coverage exists under Policy No. Y-630-483X8426-TCT-07, Policy No. QK06802212, Policy No. Y-630-483X8426-TIA-12, and Policy No. ZUP-12P59851-12-NF, for the claims which have been asserted against ATTORNEYS' TITLE INSURANCE FUND, INC.

and FLORIDA TITLE COMPANY in the *Section 10* action and that TRAVELERS is not required to pay any consent judgment or final judgment that may be entered pursuant to any settlement agreement between and among the Defendants and further requests judgment for all costs and such other relief as the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

TRAVELERS demands trial by jury of all issues so triable as a matter of right.

**DATED: September 17, 2013**

Respectfully submitted,

RORY ERIC JURMAN
Fla. Bar No. 194646
Email: rjurman@fowler-white.com
AVERY A. DIAL
Fla. Bar No. 732036
Email: adial@fowler-white.com
STEPHEN R. GROSS
Fla. Bar No. 27849
Email: sgross@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone: (954) 377-8100
Facsimile: (954) 377-8101
***Attorney for Plaintiffs, TRAVELERS INDEMNITY COMPANY OF CONNECTICUT AND ST. PAUL FIRE AND MARINE INSURANCE CO.***

W:\86958\DJ PLEADINGS\COMPLA58-DJ Complaint Finalized.9.17.13-REJ.docx