UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TRAVELERS INDEMNITY COMPANY
OF CONNECTICUT and ST. PAUL FIRE
& MARINE INSURANCE COMPANY,

        Plaintiffs,

v.                                   Case No:  2:13-cv-670-FtM-38DNF

ATTORNEY'S TITLE INSURANCE
FUND, INC., FLORIDA TITLE CO.,
SECTION 10 JOINT VENTURE, LLP,
SKY PROPERTY VENTURE, LLC,
CAS GROUP, INC., STEPHAN,
COLE & ASSOCIATES, LLC and
INTEGRA REALTY RESOURCES
SOUTHWEST FLORIDA, INC.,

        Defendants.

_____/

## ORDER[1]

     This matter comes before the Court on Plaintiffs Travelers Indemnity Company of

Connecticut and St. Paul Fire & Marine Insurance Company's Motion for Partial Judgment

on the Pleadings or, in the alternative, Motion to Strike or Abate (Doc. #146) filed on

January 6, 2015.  Defendants Section 10 Joint Venture, LLP, Sky Property Venture, LLC,

and CAS Group, Inc., filed a Response in Opposition on February 10, 2015.  (Doc. #166).

Thereafter, Plaintiffs requested (Doc. #167), and the Court granted (Doc. #172), leave to

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

file a Reply to Defendants' Response in Opposition.  Plaintiffs filed their Reply on March 6, 2015.  (Doc. #175).  The Court heard oral arguments on March 16, 2015, during which the Court granted Defendants leave to file a Supplemental Brief.  Defendants filed their Supplemental Brief on March 18, 2015.  (Doc. #180).  The Motion is now ripe for review.

### Background[2]

From 2004 to 2006, Natalia Wolf and her husband, Victor Wolf, engaged in a real estate fraud scheme that resulted in over one hundred victims losing more than $20 million.  (Doc. #50-2 at 2).  As the vehicles for their scheme, the Wolfs established roughly two dozen Florida corporations, including Sky Development Group, LLC ("Sky Development").  (Doc. #50-2 at 2).  The Wolfs utilized Sky Development to secure a $3.5 million loan from Kennedy Funding for the purchase of land located in Citrus County, Florida.  (Doc. #50-1 at 3).  Soon after, Natalia Wolf committed title fraud reselling lots of the Citrus County land to unsuspecting buyers.  (Doc. #50-2 at 2-3).  As a result, Defendant Attorney's Title Insurance Fund ("ATIF"), the title insurer on the property, sustained $3.1 million in damages paying claims associated with this fraud.  (Doc. #50-2 at 3).

After paying the insurance claims, ATIF attempted to trace the Citrus County fraud proceeds to other properties in which Natalia Wolf and Victor Wolf invested.  (Doc. #50-2 at 3).  ATIF believed that Defendant Counterclaimant Section 10 Joint Venture, LLP ("Section 10"), held one such property.  (Doc. #50-2 at 3).  Section 10 is a Florida limited liability partnership that was formed in May 2005 for the sole purpose of purchasing, and

---

[2] The Court derives this background section from Defendants' Counterclaim and the exhibits submitted in support thereof.  (Doc. #50).  For the purposes of this Motion, the Court accepts these facts as true and views them in the light most favorable to Defendants, the nonmoving party.  *See Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).

later reselling, 640 acres of land located in Lee County, Florida ("Section 10 property"). (Doc. #50-1 at 1-2).   The partnership was comprised of two entities - Defendant Counterclaimants CAS Group, Inc. ("CAS"), and Sky Property Ventures, LLC ("Sky Property").[3]   (Doc. #50 at 8).   CAS is a Florida corporation with its principal place of business in Florida.   (Doc. #50 at 8).   Sky Property is a Florida limited liability company formed in May 2005.   (Doc. #50-1 at 2).   Originally, Sky Property was comprised of four members – the Alexandra Krot Trust, Aaron Miller, Natalia Wolf, and Victor Wolf – who each owned a twenty-five percent share.   (Doc. #50-1 at 2).   But in October 2006, the Wolfs assigned their interests in Sky Property to the other members, absolving themselves of any legal or equitable interest in the company.   (Doc. #50-1 at 2).

Nevertheless, ATIF believed that the Wolfs used part, if not all, of the Citrus County fraud proceeds in connection with the Section 10 property.   (Doc. #50-1 at 6).   Therefore, on April 19, 2007, ATIF filed an action in Florida state court against Sky Property, Sky Development, and Section 10 for equitable lien/constructive trust, injunctive relief, and unjust enrichment ("ATIF Lawsuit").   (Doc. #50-1 at 4-5).   Two weeks later, ATIF recorded a *lis pendens* against the Section 10 property.   (Doc. #50-2 at 3).   In response, Section 10 filed its Answer and asserted Counterclaims for slander of title, wrongful *lis pendens*, declaratory judgment, tortious interference, and wrongful injunction.   (Doc. #50-2 at 5).   To support these claims, Section 10 averred that ATIF's "true intention" was to render the Section 10 property unmarketable in order to "shake some money out of them. . . ."   (Doc. #50-1 at 10).

---

[3] Collectively, Defendant Counterclaimants are hereinafter referred to as "SSC."

In December 2007, the state court ordered that ATIF must post a bond if it wished to maintain the *lis pendens* on the Section 10 property.  (Doc. #50-2 at 3).  ATIF never responded to the court order, but the court never dissolved the *lis pendens* either.  (Doc. #50-2 at 3).  Instead, in June 2008, the court again ordered ATIF to post a bond, but this time the court set the bond amount at $10 million and ordered ATIF to pay the bond within 45 days.  (Doc. #50-2 at 3).  Once again, ATIF failed to post the bond or respond to the court's order.  (Doc. #50-2 at 3).  The court renewed its order for a third time in December 2008.  (Doc. #50-2 at 3).  This time, however, because ATIF failed to respond yet again, the court dissolved the *lis pendens* in January 2009.  (Doc. #50-2 at 3).

A few years later, Section 10 defaulted on a loan secured by the Section 10 property, leading to a foreclosure judgment against it.  (Doc. #50-2 at 4).  Due to the foreclosure judgment, ATIF voluntarily dismissed the first two counts of its action – equitable lien/constructive trust and injunctive relief – on the basis that those counts were now moot.  (Doc. #50-2 at 4).  ATIF continued to pursue its unjust enrichment count against Section 10, notwithstanding the foreclosure.  (Doc. #50-2 at 4).  Over the next year and a half, Section 10 retained new counsel and filed several amendments to its Answer and Counterclaims.  (Doc. #50-2 at 5).  However, the court eventually dismissed each of the Counterclaims.  (Doc. #50-2 at 5).  With only ATIF's unjust enrichment claim left standing, Section 10 filed a new action against ATIF for malicious prosecution related to the ATIF lawsuit ("Section 10 lawsuit").  (Doc. #50-1).  Section 10 averred that it incurred substantial damages as a result of the "unjustified" and "wrongful" *lis pendens*, including significant loss of value to the Section 10 property. (Doc. #50-1 at 11).

On July 29, 2013, ATIF forwarded a copy of the complaint for the Section 10 lawsuit to Plaintiff Travelers Indemnity Company of Connecticut ("Travelers").  (Doc. #50-2 at 5). From 2007 until 2012, Travelers issued ATIF a "Commercial General Liability" ("CGL") insurance policy annually, covering, among other things, "personal injury" up to a $1 million limit.  (Doc. #50-2 at 5).  During this same time, Plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul") issued ATIF a "Specialty Commercial Umbrella Liability" insurance policy annually, which supplemented the Traveler's CGL policy by providing an additional $10 million in coverage.  (Doc. #50-2 at 5).  Before Travelers responded to ATIF's demand for coverage, the state court ruled that the ATIF lawsuit and the Section 10 lawsuit had the same underlying basis and consolidated the two actions, creating the "Consolidated Action."  (Doc. #50-2 at 1).

Thereafter, on September 6, 2013, Travelers responded to ATIF's demand by agreeing to defend ATIF in the Consolidated Action, but also reserving its rights to initiate a declaratory judgment action to determine the scope of its obligations and, if appropriate, to withdraw from the defense and/or seek recoupment of attorneys' fees and other litigation expenses paid during the defense.  (Doc. #50-2 at 25).  Three days later, ATIF rejected Travelers' defense.  (Doc. #50 at 12).  That same day, the parties to the Consolidated Action executed a *Coblentz* settlement agreement without notice to Travelers or St. Paul and without their consent.  (Doc. #50 at 13).  The *Coblentz* agreement provided that the parties consented to judgment in favor of Section 10 on both ATIF's unjust enrichment claim and Section 10's malicious prosecution claim, resulting in a $40 million judgment against ATIF.  (Doc. #50-3; #50-4).  Notably, because of the nature of the *Coblentz* agreement, Section 10 agreed to enforce the judgment against only

Travelers and St. Paul, not ATIF, and received assignment of rights from ATIF to do so. (Doc. #50-3).

As a result of the *Coblentz* agreement, Travelers and St. Paul instituted the instant action against all the parties in the Consolidated Action, seeking a declaratory judgment that coverage is not available for *Coblentz* agreement judgment under either the Traveler's CGL policy or the St. Paul Umbrella policy.  (Doc. #37 at 35-40).  SSC responded by filing an Answer and Counterclaims against Travelers St. Paul for declaratory judgment and breach of contract.  (Doc. #50 at 14-18).  Travelers and St. Paul[4] now bring the instant Motion for Partial Judgment on the Pleadings, or, in the alternative, Motion to Strike or Abate.  (Doc. #146).

**Legal Standard**

After the pleadings have closed, but early enough not to delay trial, a party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  As the Eleventh Circuit explained, "[j]udgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).  Courts must analyze motions for judgment on the pleadings using the same standards that govern a Rule 12(b)(6) motion to dismiss. *See Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011*) aff'd*, 719 F.3d 1245 (11th Cir. 2013).  Consequently, "[w]hen considering such a motion, the Court must accept the facts alleged in the complaint as true and draw all inferences that favor the nonmovant." *Id.* (internal citations and quotations omitted).

---

[4] Because Travelers and St. Paul filed the instant Motion jointly, the Court will hereinafter refer to both parties collectively as "Plaintiffs."

**Discussion**

Plaintiffs seek a partial judgment on the pleadings on the basis that Florida law prohibits SSC from seeking more than the policy limits of either the Traveler CGL policy or the St. Paul Umbrella policy in its attempt to enforce the Consolidated Action's *Coblentz* agreement. (Doc. #146 at 13-21). In support, Plaintiffs aver that if coverage was available to ATIF for Section 10's malicious prosecution claim (which Plaintiffs adamantly deny), the tort of malicious prosecution would trigger coverage under only one year's policy, not multiple years, because the tort is not a continuing tort. (Doc. #146 at 13-14). Plaintiffs contend that coverage is therefore limited to one year's policy limit, approximately $11 million[5], absent a claim of bad faith. (Doc. #146 at 15-21).

SSC responds that a partial judgment on the pleadings is improper because Florida case law supports its demand for the full amount of the Consolidated Action *Coblentz* agreement. (Doc. #166 at 5-10). SSC believes that an insurer who refuses to provide an unconditional defense without a reservation of rights is equivalent to one who refuses to provide a defense at all. (Doc. #166 at 5-6). And such a refusal breaches the insurer's duty to defend, thereby allowing the insured to recover damages, above the policy limits, stemming from the breach. (Doc. #166 at 6-10). With this interpretation of Florida law in mind, SSC asserts that Plaintiffs breached their duty to defend by offering to defend with a reservation of rights and that Plaintiffs are therefore liable for the full amount of damages caused by that breach – the $40 million judgment entered as part of the *Coblentz* agreement. (Doc. #166 at 5-10).

The Court will address each argument in turn.

---

[5] As noted above, the Travelers CGL policy provided $1 million in coverage and the St. Paul Umbrella policy provided $10 million in additional coverage. (Doc. #50-2 at 5).

A.  SSC's Request for Damages Above the Policies' Limits Must Be Abated Until a
    Coverage Determination

A *Coblentz* agreement is a consent agreement entered into by an insured that "assigns to [a third-party] the insured's rights against the insurer in exchange for a release from personal liability." *Perera v. U.S. Fid. & Guar. Co.*, 35 So.3d 893, 903 (Fla. 2010). These agreements typically arise when the insurer leaves the insured "unprotected" and "to its own devices to settle the case or proceed to trial." *Id.* at 900 (internal quotations omitted).  As a result, the insured "enters into a reasonable settlement agreement with the third-party claimant and consents to an adverse judgment for the policy limits that is collectable only against the insurer." *Id.*

There are three requirements to enforce a *Coblentz* agreement against an insurer: (1) the policy must cover the damages; (2) the insurer must wrongfully refuse to defend; and (3) the settlement must be reasonable and made in good faith. *U.S. Fire Ins. Co. v. Hayden Bonded Storage Co.*, 930 So.2d 686, 689-690 (Fla. 4th DCA 2006).  Moreover, Florida courts allow the enforcement of a *Coblentz* agreement in excess of the applicable policy limits if an additional element is established – the insurer acted in bad faith. *Perera, 35 So.3d at 900*.  This additional element reflects the traditional understanding under Florida law that absent a finding of bad faith, an insured cannot obtain a judgment against an insurer in excess of the policy limits.  *See State Farm Mut. Auto. Ins. Co. v. St. Godard, 936 So.2d 5, 9 (Fla. 4th DCA 2006)* (collecting cases).

Ordinarily, a claim of bad faith brought against an insurer is asserted as a violation of Fla. Stat. § 624.155(1)(b)(1).  But at least one federal court interpreting Florida law has determined that a request for a declaratory judgment that the insurer is liable for the full

amount of a *Coblentz* agreement, which exceeds the applicable policy limits, "amounts to the same thing" as a claim that the insurer violated § 624.155(1)(b)(1). *See Mobley v. Capitol Specialty Ins.*, No. 13-20636-CIV, 2013 WL 3794058, at *3 (S.D. Fla. July 19, 2013). In any case, such a claim is "premature until there is a determination of liability. . . ." *Vest v. Travelers Ins. Co.*, 753 So.2d 1270, 1276 (Fla. 2000). Therefore, "[w]here causes of action for both the underlying damages and bad faith are brought in the same action, the appropriate step is to abate the bad faith action until coverage and damages have been determined." *State Farm Mut. Auto Ins. Co. v. Tranchese*, 49 So.3d 809, 810 (Fla. 4th DCA 2010) (citing *Allstate Indem. Co. v. Ruiz*, 899 So.2d 1121 (Fla. 2005)).

In the instant Counterclaim, SSC seeks a declaratory judgment that Plaintiffs are liable for the full amount of the judgment entered as part of the *Coblentz* agreement at issue – approximately $40 million. However, the applicable Traveler's CGL and St. Paul Umbrella policies offer policy limits of only $1 million and $10 million, respectively. Because Florida law prohibits a demand in excess of the policy limits before a determination of coverage, SSC's demand is improper at this time. Therefore, the Court will abate SSC's claim for money in excess of the applicable policy limits until a determination of whether coverage exists under the policies. *See Mobley*, 2013 WL 3794058, at *3 (citing *Tranchese*, 49 So.3d at 809).

B. SSC's Argument that Plaintiffs Breached Their Duty to Defend is Unpersuasive

Florida law distinguishes between an insurer's duty to defend and its duty to indemnify. *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010) (citing *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So.2d 475, 476 (Fla. 3d DCA 1997)). Consequently, "an insurer is obligated to defend a claim even

if it is uncertain whether coverage exists under the policy." *Id.* at 1149 (internal quotations omitted).  But this defense does not have to be unconditional.  Instead, "an insurer may reserve its rights to challenge coverage under the policy without breaching its duty to defend by providing a defense under a reservation of rights." *Id.* (internal quotations omitted); *see also Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.*, 344 F.Supp.2d 1358, 1370 (M.D. Fla. 2004), *aff'd sub nom.,* 171 F. App'x 831 (11th Cir. 2006) ("It is . . . well settled that an insurer does not breach its duty to defend by offering to defend only under a reservation of rights."); *Roger Kennedy Const., Inc. v. Amerisure Ins. Co.*, 506 F.Supp.2d 1185, 1193 (M.D. Fla. 2007) ("It is well established under Florida law that an insurer may defend its insured pursuant to a reservation of rights and that an insurer does not breach its duty to defend by providing a defense pursuant to reservation of rights.").

In light of this precedent, the Court finds that Plaintiffs did not breach their duty to defend by offering to defend only under a reservation of rights.  SSC attempts to persuade the Court otherwise by citing to *Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So.2d 999 (Fla. 4th DCA 2002), for the proposition that an insurer breaches its duty to defend if it refuses to provide an unconditional defense because a conditional defense is the equivalent of an insurer refusing to provide any defense at all.  (Doc. #166 at 5).  But the Court finds this attempt unpersuasive.  Indeed, the court in *Beville* stated, "[a]s *Taylor v. Safeco* makes clear, [an insurer's] unilateral defense under a reservation of rights is similar to a refusal to provide any defense at all in its effect on the insured." 825 So.2d at 1003 (citing *Taylor v. Safeco Ins. Co.*, 361 So.2d 743, 747 (Fla. 1st DCA 1978)).  And

the implication of such a defense offer "is that the [insurer] has transferred to its insured the power to conduct the defense of the claim against its insured." *Id.*

In the Court's view, this language does not stand for the proposition that an offer to defend subject to a reservation of rights breaches an insurer's duty to defend. If, as SSC avers, the *Beville* Court intended the inverse, the court's holding would contradict the very case upon which it relies on for support. *See Taylor*, 361 So.2d at 747 (explicitly stating that the "[t]he record affirmatively shows . . . that [the insurer] did not violate any duty to defend [the insured]" by offering to defend subject to a reservation of rights). Notably, the Court is unaware of a single case interpreting *Beville* in the same manner as SSC.[6] Therefore, it is likely that SSC's interpretation is simply incorrect. Nevertheless, the Eleventh Circuit has consistently interpreted Florida law as providing that an insurer does not breach its duty to defend by offering to defend with a reservation of rights. *See Mid-Continent Cas. Co.*, 601 F.3d at 1149[7]; *Cont'l Cas. Co. v. City of Jacksonville*, 283 F. App'x 686, 690 (11th Cir. 2008). And this interpretation alone binds the Court.[8]

---

[6] SSC attempts to argue that a recent Florida Third District Court of Appeal case interpreted *Beville* in the same manner. *See Geico General Ins. Co. v. Rodriguez*, --- So.3d ----, 2014 WL 4435956, at *1 (Fla. 3d DCA Sept. 10, 2014). Unsurprisingly, the Court disagrees. The *Geico* Court cited *Beville* to support its holding that the insured no longer owed its insurer a duty to cooperate, not that the insurer breached its duty to defend by offering a defense subject to a reservation of rights. *See id.*, at *7.

[7] Interestingly, the Eleventh Circuit cited *Beville* in *Mid-Continent Cas. Co.* to support the proposition that an offer to defend under a reservation of rights "transfers to the insured the power to conduct its own defense." 601 F.3d at 1149. Under SSC's interpretation of *Beville*, the Eleventh Circuit contradicted itself by doing so. That is, the Eleventh Circuit first noted that under Florida law, an offer of a defense subject to a reservation of rights does not violate the insurer's duty to defend. *Id.* The Eleventh Circuit then continued its opinion by citing to the language in *Beville* that SSC contends stands for the inverse. *Id.* Clearly, SSC misinterprets *Beville*.

[8] "While federal courts interpreting Florida law must look to the decisions of Florida's intermediate appellate courts absent direct guidance by the Florida Supreme Court, . . . district courts are bound by their governing appellate court's construction of state law unless 'later state court decisions indicate that the Court of Appeals' earlier prediction of state law was in error.'" *Estate of Miller ex rel. Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F.Supp.2d 1235, 1249-50 (M.D. Fla. 2009) (citations omitted); *see also Vasconez v. Hansell*, 871 F.Supp.2d 1339, 1343 (M.D. Fla. 2012) (citing *Newell v. Harold Shaffer Leasing Co., Inc.*, 489 F.2d 103, 107 (5th Cir. 1974), for the proposition that "the Eleventh Circuit's interpretation of Florida law is just as authoritative as its interpretation of Federal law, . . . and [district courts are] bound to follow it").

Accordingly, the Court finds that Plaintiffs did not breach their duty to defend by offering a defense subject to a reservation of rights.

C. Florida Law Requires a Finding of Bad Faith to Recover a *Coblentz* Agreement Judgment in Excess of the Policy Limits

Florida law allows the enforcement of a *Coblentz* agreement judgment in excess of the policy limits only if (1) the insurer wrongfully refused to defend **and** (2) the insurer acted in bad faith. *Perera*, 35 So.3d at 900. Despite this clear precedent, SSC contends that Florida law does not always require bad faith as a prerequisite to recover a judgment against an insurer in excess of the policy limits. (Doc. #166 at 6-10). Instead, SSC avers that *Thomas v. W. World Ins. Co.*, 343 So.2d 1298 (Fla. 2d DCA 1977), and its progeny permit an insured to recover damages against an insurer above policy limits where the insurer has wrongfully denied a defense, thereby causing damages. (Doc. #166 at 6-10). The Court disagrees.

To begin, the Florida Supreme Court has addressed this exact issue, noting that the enforcement of a *Coblentz* agreement in excess of the policy limits requires a finding that the insurer acted in bad faith. *See Perera*, 35 So.3d at 900. This precedent alone binds the Court and is fatal to SSC's argument. Moreover, SSC fails to cite to a single case involving a Coblentz agreement in support of its argument. *See Thomas*, 343 So.2d at 1298; *Caldwell v. Allstate Ins. Co.*, 453 So.2d 1187 (Fla. 1st DCA 1984); *MCO Envtl., Inc. v. Agric. Excess & Surplus Ins. Co.*, 689 So.2d 1114 (Fla. 3d DCA 1997); *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 331 F. App'x 640 (11th Cir. 2009). Instead,

———————————————

SSC primarily relies on decades-old Florida intermediate appellate court decisions that are factually distinguishable from the instant action.  But these citations do not allow SSC to circumvent clear Florida Supreme Court precedent.[9]

Accordingly, it is now

**ORDERED:**

1. Plaintiffs' Motion for Partial Judgment on the Pleadings or, in the alternative, Motion to Strike or Abate (Doc. #146) is **GRANTED in part**.

2. To the extent Defendants Section 10 Joint Venture, LLP, Sky Property Venture, LLC, and CAS Group, Inc.'s Counterclaim seeks damages beyond the policy limits, it shall be **ABATED** until a determination of coverage is made.

**DONE** and **ORDERED** in Fort Myers, Florida, this 23rd day of March, 2015.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:  All Parties of Record

---

[9] One week after oral arguments, SSC filed a Notice of Supplemental Authority (Doc. #182), contending that a recent unpublished Eleventh Circuit case is relevant to the Court's analysis.  *See Nova Cas. Co. v. OneBeacon Am. Ins. Co.*, --- F.App'x ----, No. 13-15799, 2015 WL 1189196, at *1 (11th Cir. Mar. 17, 2015). But the Court finds *Nova* to be easily distinguishable.  First, the insurer in *Nova* unequivocally refused to defend, whereas Plaintiffs offered a defense subject to a reservation of rights.  *Id.*  Second, *Nova* involved the doctrine of equitable subrogation, which, in the insurance context, involves an excess carrier, not a third-party claimant, bringing a claim against the primary insurer for the primary carrier's bad faith in refusing to settle a claim against their common insured.  *Id.* at *3; *see also Perrera*, 35 So.3d at 900 (explaining the doctrine of equitable subrogation).  This is an entirely different scenario than the *Coblentz* agreement at issue.  *See Perrera*, 35 So.3d at 900 (explaining the difference between covering in excess of policy limits in a *Coblentz* action and an equitable subrogation action).